RALPH DESSAUER AND REBECCA DESSAUER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1766–68. Filed February 24, 1970.

*Thomas H. Krise*, for the petitioners.
*James J. McGrath*, for the respondent.

OPINION

The only issue for our consideration is the amount of gain or loss, if any, to be reported by petitioners by virtue of the transactions with the finance company. This issue will be resolved by the provisions of section 453(d), I.R.C. 1954,[1] whose pertinent parts read as follows:

SEC. 453(d). GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or *otherwise disposed of*, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, *or disposition* otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

(2) BASIS OF OBLIGATION.—The basis of an installment obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. [Emphasis supplied.]

Initially, the basis of the obligation must be established. Petitioner contends that the basis figures are those computed by the corporations,[2] since they were used by the Commissioner in his statutory notice and the amendment to answer and therefore the Commissioner may not now revise these figures. The Commissioner does not agree and urges us to accept figures based on computations made under section 453(d)(2) from stipulated figures.

We accept the Commissioner's calculations under section 453(d)(2). From the outset, petitioner has known that the Commissioner was proceeding under section 453(d). Further, the stipulation of facts entered herein expressly excludes an agreement as to the computation of basis for purposes of section 453(d). It also appears that

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

[2] These would be as follows:

| *Huddleston FYE* | *Basis* |
|---|---|
| 9/30/64 | $531,871.20 |
| 9/30/65 | 918,893.92 |
| *Washington FYE* | |
| 1/31/64 | 994,140.82 |

the reason for the delay in making a determination under section 453(d) stems from the inadequacy of the corporations' tax returns and the records of the finance company in the first instance and not from a lack of diligence on the Commissioner's part.

The Commissioner on brief determined the basis of the obligations to be $542,365.68 and $942,278.69 for Huddleston in 1964 and 1965, and $1,024,949.25 for Washington in 1964. We find that under section 453(d)(2) his calculations are correct.[3]

Having determined the correct basis for the obligations, we next proceed to the question of gain or loss. Petitioner has conceded that a "disposition" of the obligations occurred. However, the parties assumed that by virtue of such a concession the gain or loss computation was governed by paragraph (1)(B) because it, too, talks of a "disposition" and petitioners argued on brief and presented testimony at trial on the "fair market value" of these obligations.

The label "disposition" is not something in and of itself which automatically calls paragraph (1)(B) into operation. The term "disposition" as used in 453(d)(1) is part of very broad language, i.e., "distributed, transmitted, sold, or otherwise disposed of," the purpose of which is to terminate the availability of the installment method of reporting income when the attendant circumstances indicate that the vendor under the installment obligation has received all the proceeds that he would have received if there had been a sale for cash. At such a time the privilege of using the installment method ceases and the income is to be reported in full.

Once it is determined that use of the installment method is no longer permissible, the gain or loss resulting from the "disposition" of the obligations is to be calculated under either 453(d)(1)(A) or (B). Here the parties apparently proceeded under (1)(B) because of the term "disposition" appearing therein. This we think was not necessary under the facts of this case.

---

[3] The Commissioner proceeded as follows (sec. 1.453–9(b)(3), ex. 1, Income Tax Regs.):

*Huddleston FYE 9/30/64*

| | |
|---|---:|
| Selling price of property [1] | $1,020,863.74 |
| Cost | 582,208.21 |
| Total profit | 438,655.53 |
| Total contract price [2] | 1,020,863.74 |

Proportion of each payment returnable as income $\dfrac{\$438,655.53}{\$1,020,863.74} = 42.9\%$.

| | |
|---|---:|
| Face value of notes | $949,852.32 |
| Amount of income returnable were the notes satisfied in full $949,852.32 × 42.9% | 407,486.64 |
| Basis of obligations | 542,365.68 |

[1] Sales includes finance charges. Income Tax Regs., sec. 1.453–2(c)(2).
[2] Total contract price is the same as total sales. Income Tax Regs., sec. 1.453–2(c)(2).
[As to the other basis figures, the Commissioner made similar computations.]

In our Findings of Facts we found the corporations and the finance companies to be unrelated and we have no other evidence before us to indicate that the transactions were other than at arm's length. This being so, we think, as did the Fifth Circuit in *Hegra Note Corporation* v. *Commissioner*, 387 F. 2d 515 (C.A. 5, 1967), affirming a Memorandum Opinion of this Court, that it is not important to pigeonhole the transactions as either within 453(d) (1)(A) or (1)(B) for the result should be the same under either. The essential point is that the corporations voluntarily exchanged the installment obligations for cash, therefore under (1)(A), the amount realized is the amount of cash received and under (1)(B), the fair market value of the obligations is also the amount of cash received, for as we have found, the parties were dealing at arm's length, and "Absent a readily ascertainable value * * * the values 'of * * * two properties exchanged in an arms-length transaction are either equal in fact, or are presumed to be equal.'" *United States* v. *Davis*, 370 U.S. 65, 72 (1962).

We therefore hold that the gain or loss on the transfer of the installment obligations is to be calculated from the difference between amount of cash received and the basis figures determined by the Commissioner.

*Decision will be entered under Rule 50.*